IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| KEVIN GETTIS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:09-cv-639-DGW |
| | ) | |
| STATE OF ILLINOIS DEPARTMENT OF TRANSPORTATION, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND OPINION**

**WILKERSON, Magistrate Judge.**

Now pending before the Court is a Motion for Summary Judgment filed by Defendant, the Illinois Department of Transportation on July 23, 2010 (Doc. 38). For the reasons set forth below, the motion is **GRANTED**.

**FACTUAL BACKGROUND**

Plaintiff Kevin Gettis, who is African-American, was employed by Defendant Illinois Department of Transportation ("IDOT") from February 9, 2004, to May 14, 2008, when his employment was terminated. He filed this action in Illinois state court and Defendant removed it to this court on August 20, 2009 (Doc. 2). In his amended complaint filed May 20, 2010 (Doc. 28), Plaintiff alleged that Defendant IDOT unlawfully discriminated against him on the basis of his race and retaliated against him for exercising his civil rights in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, *et seq*.), 42 U.S.C. § 1983, and the Illinois Human Rights Act 775 ILCS 5/1-109, *et seq*.

Plaintiff was hired by IDOT in 2004 as a Local Agency Liaison, a position classified as a Technical Manager V (Def. Exh. 1). As a Technical Manager V, Plaintiff was exempt from the Personnel Code and could be terminated without cause (Def. Exh. 1; Def. Exh. 2, ¶¶ 3, 6-8). Kyle Anderson, then Assistant to the Chief of Operations, supervised Plaintiff in the Local Agency Liaison position (Def. Exh. 24, Anderson Affidavit, ¶ 5). On May 18, 2004, Plaintiff received a 3-month-probationary performance evaluation. The report indicated that Plaintiff's performance was acceptable and that he accomplished his objectives (Pl. Exh. C). On January 25, 2007, Plaintiff received an annual performance evaluation signed by Kyle Anderson. The evaluation indicated Plaintiff's performance was "outstanding in all phases of the position" and his "[a]chievements and contributions greatly exceed standards, expectations, and requirements" (Pl. Exh. B).

In June 2007, Plaintiff began serving as Acting Urban Planning Chief for District 8, a position formerly held by James Stack (Def. Exh. 3, Gettis Depo. pp. 25-26). Plaintiff was not officially promoted to the job of Urban Planning Chief, but assumed the duties on a trial basis (Def. Exh. 4, Stack Affidavit, ¶ 5). He remained classified as a Local Agency Liaison (Def. Exh. 24, ¶ 7). Thus, on paper, Kyle Anderson remained Plaintiff's supervisor, but in practice he reported to James Stack, who supervised and trained Plaintiff in the Acting Urban Planning Chief position (Def. Exh. 24, ¶ 8). While acting as Urban Planning Chief, Plaintiff was not assigned to work in James Stack's former office, but in a cubicle in the Land Acquisition area. Plaintiff was aware of the work station arrangements prior to accepting the position (Def. Exh. 4, ¶¶ 8-12, 15-16; Def. Exh. 24, ¶¶ 18-19).

Sometime in 2007, Elbert Simon, IDOT Bureau Chief of Civil Rights, and long-time friend of Plaintiff, was in the District 8 office on other business (Pl. Exh. A, Simon Depo., p. 16).

He saw Plaintiff at that time. On October 16, 2007, Plaintiff sent an e-mail to Simon asking for his advice and asking him to call Plaintiff (Pl. Exh. E). On October 19, 2007, Plaintiff sent Simon another e-mail discussing Plaintiff's perceived "disrespect" in his job. He stated, "I do believe something is amiss in the office because of your visit" (Pl. Exh. F). Elbert Simon testified in deposition that other African-American IDOT employees informed him that they did not believe Plaintiff was being given the same "resources and opportunities" as his white predecessor (Pl. Exh. A, pp. 16-19). Plaintiff testified in deposition that Mike Myler told him that Kyle Anderson said he was "pissed" that Elbert Simon was "around here asking questions" (Def. Exh. 3, p. 60).

On November 29, 2007, Kyle Anderson and James Stack met with Plaintiff in a Documented Verbal Counseling session (Def. Exh. 4, Exhibit B to Stack Affidavit). Plaintiff was counseled regarding his accountability for completing leave requests and time sheets, abuse of sick leave, absenteeism, failure to report to work on days when James Stack was available to work with him, and failure to attend an annual meeting of the East West Gateway Council of Governments without notice to his supervisors (Def. Exh. 4, Exh. B).[1] At the counseling session, James Stack informed Plaintiff that going forward he would be required to submit weekly itineraries consisting of a to-do list, scheduled meetings, and progress on ongoing projects. Plaintiff was also provided with a list of major duties assigned to the position of Urban Planning Chief, which included the development of the Transportation Improvement Program ("TIP") and a long range plan for District 8 (Def. Exh. 4, Exh. B).

In December of 2007, Mary Lamie, IDOT Deputy Director of Highways and Regional Engineer, met with Clayton Harris, IDOT Chief of Staff, regarding Plaintiff's job performance,

---

[1] The Documented Verbal Counseling summary identified participation in the East West Gateway Council of Governments as one of Plaintiff's "most important responsibilities" in the position of Urban Planning Chief.

3

generally, and specifically regarding disrespectful, defensive, and belligerent e-mails Harris had received from Plaintiff (Def. Exh. 14, Lamie Affidavit, ¶ 11). Harris reminded Lamie that because Plaintiff was in a "double-exempt" position, IDOT did not need a reason to terminate his employment. Lamie did not support Plaintiff's termination at that time because she knew Plaintiff had received a documented counseling and wanted to give Plaintiff a chance to improve his job performance (Def. Exh. 14, ¶¶ 12-14).

In January of 2008, Plaintiff called in sick three days in a row. From January 1, 2008, to March 19, 2008, Plaintiff used 45 hours of sick time, 17.50 hours of vacation time, and 22 hours of personal time. Further, Plaintiff called in late on February 22, 2008. (Def. Exh. 16; Exh. 17.)

In early 2008, Kyle Anderson completed a portion of Plaintiff's annual evaluation for the prior year. He was unable to complete the evaluation, however, because in the position of acting Urban Planning Chief, Plaintiff reported to James Stack. As late as April 2008, Anderson was awaiting direction from District 8 to complete Plaintiff's evaluation (Def. Exh. 24, ¶¶ 41-45; Exh. C to Anderson Affidavit).

On February 29, 2008, James Stack and Kyle Anderson sent a memorandum advising Mary Lamie that they did not recommend that Plaintiff be permanently promoted to the position of Urban Planning Chief due to his poor work performance, poor work habits, lack of credibility, and need for "constant supervision." (Def. Exh. 4, ¶¶ 59-60; Def. Exh. 4, Exh. D; Def. Exh. 24, ¶¶ 38-39). When Plaintiff's job performance did not improve, Lamie determined that Plaintiff would not "be a good fit" for the permanent position (Def. Exh. 14, ¶ 15).

In March 2008, Mary Lamie was informed by Christine Reed, Director of Highways, and the Governor's office that Plaintiff would be terminated. She forwarded this information via e-mail to Kyle Anderson on March 24, 2008 (Def. Exh. 14, ¶¶ 17-18, Exh. A to Lamie Affidavit).

On April 2, 2008, Plaintiff was notified via e-mail that he needed to prepare TIP amendments. In a May 9, 2008, e-mail, Plaintiff indicated he was unaware of his responsibility to complete the assignment. Once informed, he completed the assignment the same day (Def. Exh. 4, Exh. E).

On April 11, 2008, Plaintiff filed an Internal Discrimination Complaint with IDOT claiming that Mary Lamie, Kyle Anderson, and James Stack, had discriminated against him on the basis of race and retaliated against him for exercising his civil rights (Def. Exh. 19).

On May 8, 2008, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission (Pl. Exh. 7). The IDHR sent a letter to the IDOT informing them of the charge on May 12, 2008. The letter is file stamped "received" by the IDOT Bureau of Civil Rights on May 14, 2008 (Pl. Exh. 2).

Plaintiff was informed by letter signed by Milton R. Sees, of his termination on May 14, 2008 (Pl. Exh. 3). Sees, the Acting Secretary of IDOT, terminated Plaintiff on the recommendations of his staff, including that of Clayton Harris (Def. Exh. 21, ¶ 7).

## DISCUSSION

*Summary Judgment Standard*

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be

resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A fact is material if it is outcome determinative under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ballance v. City of Springfield, Illinois Police Dep't*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004). *See also Anderer v. Jones*, 385 F.3d 1043, 1064 (7th Cir. 2004).

A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving's party case necessarily renders all other facts immaterial." *Id.*

The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)). The moving party bears the initial burden of producing evidence that identifies "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes to demonstrate the absence of a genuine issue of material fact." *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001) (quoting *Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)). After the moving party has satisfied its burden to establish that no genuine issue of material fact exists, the burden shifts to

the non-moving party to "set forth specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The non-moving party "may not rely merely on allegations or denials in its own pleading." *Id.* The opposing party must, instead, "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324.

*Racial Discrimination*

Under Title VII, it is unlawful for an employer to discharge an employee "or otherwise discriminate against any individual with respect to his compensation, terms, conditions or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

*Direct Method*

To survive summary judgment, a plaintiff may demonstrate discrimination under Title VII in one of two ways. Under the direct method, a plaintiff must present either direct or circumstantial evidence of race-based discrimination. *Winsley v. Cook County*, 563 F.3d 598, 604 (7th Cir. 2009). Direct evidence "is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption." *Rhodes v. Illinois Dep't of Trans.*, 359 F.3d 498, 504 (7th Cir. 2004). To constitute direct evidence, "an admission of discriminatory animus is "essentially require[d]." *Id.* Circumstantial evidence is that which "allows a jury to infer intentional discrimination by the decisionmaker." *Id.* (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994)). Pieces of circumstantial evidence, although not convincing taken separately, may be used to create a "convincing mosaic" of discrimination. *Daugherty v. Wabash Ctr., Inc.*, 577 F.3d 747, 751 (7th Cir. 2009) (citations omitted); *see also Nagle v. Village of Calumet Park*, 554 F.3d 1106,

1115 (7th Cir. 2009). A plaintiff may survive a motion for summary judgment under the direct method by "creating a triable issue" regarding discriminatory motive. *Nagle*, 554 F.3d at 1115.

Plaintiff has failed to demonstrate Defendant violated Title VII under the direct method because he has offered no evidence of discriminatory motive. In response to the motion for summary judgment, Plaintiff points to three pieces of evidence to support a direct-method claim. First, Plaintiff's white predecessor in the job had an office and Plaintiff was given only a cubicle in which to work. Second, Plaintiff was not afforded progressive discipline prior to termination, and his termination letter did not provide a reason for his discharge. Neither of these facts implicate race and thus do not directly demonstrate or support an inference of race-based discrimination. The third fact, that other black employees at IDOT told Elbert Simon they believed Plaintiff was treated unfairly, does not meet the standard of direct evidence of discrimination in that it is not an admission of or direct evidence of the discriminatory motive of any supervisor. Defendants argue in reply that even if true, this fact could not stave off summary judgment because it is inadmissible hearsay evidence. No matter, the Court finds that the opinion of other employees as to the motivation of Plaintiff's supervisors in and of itself is insufficient to directly show or create a "convincing mosaic" of racial discrimination.

***Indirect Method***

A plaintiff may also prove employment discrimination indirectly under the burden-shifting analysis described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). To do so, a plaintiff must make a *prima facie* case of racial discrimination by demonstrating 1) he was a member of a protected class; 2) he met his employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) he was treated less favorably than other, similarly situated employees. *Bio v. Fed. Express Corp.*, 424 F.3d 593, 596 (7th Cir. 2005).

After an employee has established a *prima facie* case of discrimination, the burden shifts to the employer to demonstrate a legitimate, non-discriminatory reason for its employment action. *Bio*, 424 F.3d at 596. If the employer articulates a legitimate reason, the burden shifts back to the plaintiff to demonstrate that the employer's stated reasons were "merely pretext for discrimination." *Rudin v. Lincoln Land Community Coll.*, 420 F.3d 712, 724 (7th Cir. 2005).

The Court finds that Plaintiff has failed to make out his *prima facie* case because he has not shown that he was treated differently from another similarly situated white employee. There is no dispute that Plaintiff, who is African-American, is a member of a protected class. There is also no dispute that Plaintiff was terminated from his employment with IDOT, which constitutes a materially adverse employment action.[2] At issue, therefore, are the second prong, whether Plaintiff was meeting his employer's legitimate expectations, and the fourth prong, whether Plaintiff was treated differently from similarly situated employees.

Because it is dispositive, the Court takes the fourth prong first. A similarly situated employee is "directly comparable in all material respects" to a plaintiff. *Dear v. Shinseki*, 578 F.3d 605, 610 (7th Cir. 2009). Although the comparable employee does not have to be "identical" to the plaintiff, a court will look for similarity in job description; standards of evaluation; supervisor; experience, education, and other qualifications; and participation in similar conduct without similar adverse consequences. *Caskey v. Colgate-Palmolive Co.*, 535

---

[2] Plaintiff argues that Plaintiff's workplace assignment to a cubicle instead of his predecessor's walled office was an adverse employment action. The Court disagrees. An adverse employment action "must materially alter the terms and conditions of employment." *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (quoting *Stutler v. Ill. Dep't of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001)). Materially adverse employment actions typically involve economic loss, *see Whittaker*, 424 F.3d at 647-48, or a "significant change in the claimant's employment status," *Rhodes v. Ill. Dep't of Trans.*, 359 F.3d 498, 504 (7th Cir. 2004). "Not everything that makes an employee unhappy is an actionable adverse action." *Nagle*, 554 F.3d at 1116. *See also Rhod*es, 359 F.3d at 505 ("mere temporary inconveniences" are not adverse employment actions). Even poor performance evaluations and oral or written reprimands do not rise to the level of adverse employment actions unless they result in "tangible job consequences." *Whittaker*, 424 F.3d at 648 (quoting *Longstreet v. Ill. Dep't of Corr.*, 276 F.3d 379, 384 (7th Cir. 2002)).

F.3d 585, 592 (7th Cir. 2008); *Dear*, 578 F.3d at 610. The plaintiff bears the burden of identifying similarly situated employees. *Id.*

Plaintiff here has not identified any similarly situated employee who was treated differently than he was. Thus, he has failed to make out a *prima facie* case under *McDonnell Douglas*. In response to the motion for summary judgment, Plaintiff identifies two employees, Elizabeth Tracy and Carla Kelly, as similarly situated. Plaintiff testified in deposition, however, that he did not know any of the specifics of IDOT treatment of either of these employees (Def. Exh. 3, p. 121). In support of the argument that Plaintiff had satisfied the similarly-situated prong, Plaintiff pointed to evidence that white female employees expressed their observations that Plaintiff was treated differently than they were, that African-American co-workers reported to Elbert Simon that Plaintiff was treated unfairly, and that IDOT assigned Plaintiff to a cubicle instead of his predecessor's office. None of this evidence addresses any of the factors outlined in *Caskey* by which a Court is to determine whether an identified employee is similarly situated and thus comparable to the Plaintiff. Because Plaintiff has failed to identify any similarly situated, non-African-American employees, he has failed to establish a *prima facie* case of race-based discrimination. *See Dear,* 578 F.3d at 610 (affirming district court's grant of summary judgment in favor of defendant for Plaintiff's failure to identify similarly situated employee); *Caskey*, 535 F.3d at 592 (same); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002) (holding plaintiff failed to make *prima facie* case by failing to meet burden of establishing a similarly situated employee).

Even if the Plaintiff had identified a similarly situated employee, he would still fail to make a *prima facie* case of discrimination because he has not demonstrated that he was meeting his employer's legitimate expectations at the time of his discharge. Whether a plaintiff met his

employer's expectations is viewed at the time of the adverse employment action. *Dear*, 578 F.3d at 610. Plaintiff provides performance evaluations from 2004 and from January 2007 showing that he was performing satisfactorily. Both of these evaluations, however, predate Plaintiff's assumption of the duties of Urban Planning Chief. The Defendant has demonstrated that Plaintiff was not performing adequately in that position. The November 2007 Documented Verbal Counseling indicated Kyle Anderson and James Stack were concerned about Plaintiff's accountability for completing leave requests and time sheets, abuse of sick leave, absenteeism, failure to report to work on days when James Stack was available to work with him, and failure to attend an annual meeting of the East West Gateway Council of Governments without notice to his supervisors. Aside from the 2004 and January 2007 performance evaluations, Plaintiff has provided no evidence to demonstrate he was performing his job satisfactorily at the time of his discharge. For these reasons, Plaintiff's race-based discrimination claim fails as a matter of law because he has not met his burden of demonstrating a *prima facie* case under the *McDonnell Douglas* burden-shifting analysis.

### *Retaliation*

An employer may not punish an employee for complaining about discriminatory treatment in the workplace. 42 U.S.C. § 2000e-3(a); *Durkin v. City of Chicago*, 341 F.3d 606, 614 (7th Cir. 2003). As with claims of discrimination under Title VII, charges of retaliation may be proved by either the direct method or the indirect, burden-shifting method. *See Davis v. Con-Way Trans. Cent. Express, Inc.*, 368 F.3d 776, 786 (7th Cir. 2004).

### *Direct Method*

To establish improper retaliation under the direct method, a plaintiff must present evidence that 1) he participated in a statutorily protected activity; 2) he suffered a materially

adverse employment action; and 3) a causal connection between the two. *Silverman v. Bd. of Educ. of the City of Chicago*, No. 10-2977, 2011 WL 941518 at *9 (7th Cir. March, 21, 2011); *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 686 (7th Cir. 2008). Plaintiff has presented evidence that he complained informally to Elbert Simon about being treated disrespectfully in October 2007. On April 11, 2008, Plaintiff filed a charge of discrimination with the Illinois Department of Human Rights. There is no dispute that Plaintiff suffered a materially adverse employment action—he was fired. Plaintiff, however, has not shown a causal link between the protected activity and his discharge.

The only piece of direct evidence Plaintiff offers is his deposition testimony that Mike Myler told him that Kyle Anderson was "pissed" that Elbert Simon was asking questions. Defendant argues that Plaintiff's statement in deposition is inadmissible hearsay, and therefore insufficient to defeat summary judgment. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) ("A party may not rely upon inadmissible hearsay to oppose a motion for summary judgment."). The Court agrees. This statement alone is not sufficient to defeat summary judgment. Moreover, it is not clear from the evidence submitted that Plaintiff's informal comments to Elbert Simon, his friend, who was also the IDOT Bureau Chief for Civil Rights, was a statutorily protected activity.

Plaintiff has also not demonstrated a causal link between his April 2008 charge of discrimination and his May 2008 termination. It is a well-settled rule that suspicious timing alone will not prevent summary judgment on a retaliation claim. *Stone v. City of Indianapolis Pub. Util. Div.*, 281 F.3d 640, 644 (7th Cir. 2002) ("[M]ere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a triable issue."). Defendant has also

produced evidence that the Director of Highways and the Governor's Office decided to terminate Plaintiff in March 2008, before he had filed a charge with IDHR. Furthermore, evidence submitted by Plaintiff indicates that IDOT received notification of Plaintiff's IDHR claim the same day he was terminated. Plaintiff offers no evidence that Martin Sees, who wrote the termination letter, or Clayton Harris, who advised Martin Sees, knew of the IDHR charge prior to Plaintiff's termination.

*Indirect Method*

Having failed to prove his retaliation claim via the direct method, Plaintiff may make a *prima facie* case of retaliation for complaining about discriminatory conduct in the workplace, by showing that 1) he engaged in a statutorily protected activity; 2) he met the employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) he was treated less favorably than similarly situated employees who did not engage in such activity. *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 785 (7th Cir. 2007). If a Plaintiff establishes a *prima facie* case, the burden shifts to the employer to demonstrate a non-discriminatory reason for its action. If the employer provides such a reason, the burden shifts back to the plaintiff to show the employer's reason was pretext. *Id.*

Plaintiff has not identified any similarly situated individual who was treated more favorably despite complaints about workplace discrimination. Furthermore, as with his race-based discrimination claim described above, the Plaintiff has not demonstrated that he was meeting IDOT's legitimate performance expectations at the time of his discharge. Thus, his retaliation claim fails as a matter of law because he has not met his burden of demonstrating a *prima facie* case under the *McDonnell Douglas* burden-shifting analysis.

In summary, Plaintiff has failed to prove essential elements of both his racial discrimination and retaliation claims. Thus, Defendant is entitled to judgment as a matter of law. *See Celotex,* 477 U.S. at 323.

## Conclusion

Therefore, based on all the foregoing, the Motion for Summary Judgment filed by Defendant Illinois Department of Transportation (Doc. 38) is **GRANTED**. The Clerk is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

**DATED: March 30, 2011**

                                                **DONALD G. WILKERSON**
                                                **United States Magistrate Judge**